## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### BECKLEY DIVISION

**KENDRICK MINTON,**

      **Petitioner,**

**v.**                                                    **Case No. 5:17-cv-04294**

**RODNEY CHANDLER, WARDEN,[1]**
**FCI Fort Worth**

      **Respondent.**


### PROPOSED FINDINGS AND RECOMMENDATIONS

Pending before the Court is Petitioner's *pro se* Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241. (ECF No. 1). This matter is assigned to the Honorable Irene C. Berger, United States District Judge, and by Standing Order has been referred to the undersigned United States Magistrate Judge for the submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). For the following reasons, the undersigned respectfully **PROPOSES** that the District Court confirm and accept the foregoing findings and **RECOMMENDS** that Petitioner's

---

[1] Petitioner was incarcerated in Federal Correctional Institution Beckley, ("FCI Beckley"), in Beaver, West Virginia when he filed the instant petition, and he correctly named as Respondent David Young, the warden at that facility. Since that time, Petitioner has been transferred to Federal Medical Center Fort Worth, ("FMC Fort Worth"), in Fort Worth, Texas where he is presently in custody. *See* BOP inmate locator at www.bop.gov/inmateloc/. Pursuant to Federal Rule of Civil Procedure 25(d), Rodney Chandler, warden of FMC Fort Worth, will be substituted as Respondent in this case. Although Petitioner is no longer in custody in the Southern District of West Virginia, this Court retains jurisdiction over the matter. "Jurisdiction is determined at the time an action is filed; subsequent transfers of prisoners outside the jurisdiction in which they filed actions do not defeat personal jurisdiction." *United States v. Edwards*, 27 F.3d 564 (4th Cir. 1994) (citing *Francis v. Rison,* 894 F.2d 353, 354 (9th Cir. 1990)).

Petition for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241, (ECF No. 1), be **DENIED** as moot; Petitioner's Motion for Demand for Judgment Relief to be Granted, (ECF No. 19), be **DENIED;** Respondent's Motion to Dismiss, (ECF No. 21), be **GRANTED;** and this action be **DISMISSED** and **REMOVED** from the docket of the court.

## I.    Relevant Factual and Procedural Background

In 2007, Petitioner Kendrick Minton ("Minton") pled guilty in the United States District Court for the Northern District of Georgia to two counts of armed bank robbery and one count of using a firearm in relation to a bank robbery and was sentenced to 204 months of imprisonment. *See USA v. Minton et al.*, Case No. 1:07-cr-00017-AT-JFK-1 (N.D. Ga. Jan. 9, 2007) at ECF Nos. 8, 27-1, 73. The United States Court of Appeals for the Eleventh Circuit affirmed Minton's convictions and sentence the following year, in July 2008. *Id.* at ECF No. 117.

### *Minton's § 2241 Petition Filed Herein*

In November 2017, Minton filed the instant § 2241 petition in which he alleges that his due process rights under the Fifth Amendment to the United States Constitution were violated as a result of disciplinary action taken by the Federal Bureau of Prisons ("BOP"). (ECF No. 1 at 6). According to Minton, on January 26, 2016, he and three other inmates became ill while confined at the Federal Correctional Complex ("FCC") in Oakdale, Louisiana. (ECF No. 10 at 1). Minton was experiencing seizures, so he was transported to the Oakdale Community Hospital. (*Id.*). A urine specimen was taken at the hospital and initially tested positive for the presence of THC. (*Id.* at 3). The sample was then sent to a BOP central-office approved laboratory for a confirmatory test. (*Id.*). On February 4, 2016, the BOP laboratory results were generated and established that Minton's sample

2

was in fact negative for the presence of THC and for any other controlled substance. (ECF No. 10 at 3). Minton was again screened for the presence of controlled substances on February 25 and March 10, 2016, and his specimens were likewise negative. (ECF No. 10 at 4).

On March 16, 2016, a family practice nurse at FCC Oakdale received a copy of Minton's medical records from Oakdale Community Hospital, which contained the now refuted results from Minton's preliminary urine screen. (*Id.*). The medical records were nonetheless forwarded to the BOP's Special Investigative Services unit ("SIS"), which was examining the circumstances surrounding Minton's illness and seizures on January 26, 2016. (*Id.*). Apparently unaware of the final report from the BOP's laboratory establishing the absence of drugs in Minton's urine sample, the SIS issued an incident report accusing Minton of using narcotics in violation of BOP regulations. The incident report relied on the preliminary results from Oakdale Community Hospital and failed to mention the contradictory results from the BOP's own laboratory. (*Id.* at 5).

On April 5, 2016, Petitioner attended a disciplinary hearing on the incident report. (ECF No. 10 at 6). Petitioner, who was unaware at the time that the BOP's laboratory had generated a final report exculpating him, still vehemently denied the allegation. He requested a copy of the "confirmatory" laboratory report and other documentation that the BOP was required to obtain in cases of alleged drug use by inmates. Yet, despite the mandates of the BOP's program statement and the law, the requisite documentation was not included in the disciplinary record. (*Id.*) Notwithstanding the absence of such documentation, the Discipline Hearing Officer ("DHO") found Minton guilty of the incident and severely sanctioned him. (*Id.*).

Minton appealed the DHO's findings to the Regional Office, again asking that the

3

confirmatory report and other documentation be obtained and reviewed. (*Id.* at 7). His appeal was denied. (*Id.* at 9). Although Minton had gone to great lengths to obtain the paperwork himself—even filing a Freedom of Information Act ("FOIA") request—the Regional Office denied his appeal on the basis that Minton had failed to supply any evidence to corroborate his contention that the DHO's finding was without factual support. (ECF No. 10 at 9). Minton continued his efforts to challenge the DHO's finding, but was transferred to FCI Beckley. Thereafter, Minton proceeded to appeal his disciplinary sanction, but his attempts were repeatedly thwarted through a series of bureaucratic roadblocks and hurdles. Accordingly, Minton filed the instant § 2241 petition, contending that the BOP "capriciously" imposed sanctions against him based on a determination that lacked a sufficient factual basis. (ECF No. 1 at 6-7).

### *Respondent's Answer to Show Cause Order*

On December 8, 2017, the undersigned issued a Show Cause Order, directing Respondent to answer the petition. (ECF No. 5). On January 4, 2018, Respondent filed a Response To Order to Show Cause in which he argued that Minton's claim lacked merit. (ECF No. 8 at 1). Respondent attached an internal BOP "incident report" prepared on March 22, 2016, along with related paperwork, which provided the BOP's view of events. (ECF No. 8-1).

According to the BOP's report, on January 26, 2016, Minton was transferred first to the institution hospital, and then to a community hospital, after experiencing seizures. (*Id.* at 3). When subsequently questioned by SIS staff, Minton admitted that prior to developing the seizures, he purchased what he believed to be a K-2 Synthetic Marijuana cigarette from another inmate. (*Id.*). After taking "a couple of hits" from the cigarette, Minton woke up in the hospital. (*Id.*). The report noted that Minton was given a urine

4

toxicology test at the Oakdale Community Hospital, and the test returned a positive result for marijuana. (*Id.*). After reviewing the incident report, the Unit Discipline Committee ("UDC") referred the charge to the DHO for further hearing. (*Id.*).

The related paperwork supplied by Respondent shows that on March 28, 2016, Minton was informed that he was being investigated by the DHO for violation of BOP rules due to the January 22, 2016 incident. (ECF No. 8-1 at 6). Minton was informed he was entitled to have a full-time staff member represent him at the scheduled hearing, and he signed a statement indicating he wished to waive this representation. (*Id.*). Minton further signed a statement indicating he had been advised of the rights he had in the upcoming DHO hearing including the right to be present, the right to offer statements in his defense, and the right to call witnesses and produce evidence. (*Id.* at 8).

The DHO hearing was held on April 5, 2016. (*Id.* at 12). On April 8, 2016, the DHO determined that Minton was guilty of violating BOP offense code 112, which prohibits the unprescribed use of narcotics. (*Id.* at 10-12). The DHO stated that in reaching this determination, he considered the incident report, which contained Minton's statements to SIS staff; a medical discharge summary from Oakdale Community Hospital which reflected that Minton told hospital staff he had smoked a synthetic marijuana cigarette and indicated a diagnosis consistent with that statement; and the positive marijuana test result from Oakdale Community Hospital, which was accompanied by a statement from hospital staff asserting that Minton was not at the time prescribed any medicine which would be expected to reveal a positive test result for marijuana. (ECF No. 8-1 at 11). The DHO indicated that he also considered Minton's statement at the hearing saying, "I am not guilty. I fell out in the Unit and do not remember anything after that." However, the DHO felt that the other evidence of record was more convincing than Minton's denial.

(ECF No. 8-1 at 11). Minton was sanctioned with the loss of 41 days of good conduct time, 60 days disciplinary segregation, and 180 days loss of phone, visiting, and commissary privileges. (*Id.* at 12). Respondent agrees that Minton appealed the disciplinary action in accordance with the BOP administrative appellate procedures and has successfully exhausted his claim. (*Id.* at 1).

### Minton's Reply to the Government's Response

On January 29, 2018, Minton filed a Reply to the Government's Response to Order to Show Cause. (ECF No. 10). In the Reply, Minton disputes Respondent's contention that the BOP disciplinary action complied with the requisite due process safeguards. (*Id.* at 24). Minton contends that his disciplinary hearing clearly did not comport with due process protections, as the BOP declined to follow its own procedural rules both by failing to maintain a proper chain of custody for the initial positive toxicology test results, and by ignoring the subsequent "confirmatory" urine test, which revealed negative results for drug use. (*Id.* at 4-7). Minton attached several exhibits to his Reply, including the purported confirmatory drug test—a BOP "urinalysis details" report completed on February 4, 2016, which indicates that the final result of the test was "lab negative." (*Id.* at 27). Minton stated that he obtained the urinalysis test results in September 2017 pursuant to his FOIA request filed on May 15, 2016. (*Id.* at 8, 11). Minton only included a single page of the results from this request in his Reply. (*Id.* at 27).

On March 1, 2018, Minton filed a Notice of Change of Address, informing this Court that he had been transferred to FCC Butner Low in Butner, North Carolina. (ECF No. 13). Minton filed a contemporaneous Reply to the Government's Response to Order to Show Cause, which was virtually identical to the Reply filed in January 2018. (ECF No. 14).

### *Recent Activity*

In June 2018, Minton sent a letter inquiring about the status of the instant case and was informed the case was currently under review. (ECF Nos. 15, 16). In March 2019, Minton submitted a Motion for Demand for Judgment Relief to be Granted (ECF No. 19). In the Motion, Minton asks that he receive judgment in his favor pursuant to Federal Rule of Civil Procedure 54(c). In support of his request, Minton notes that the "case has been held in abeyance past the time line [sic] for a suitable response as ordered." (*Id.* at 1). Minton further contends that Respondent cannot reasonably dispute his arguments and that he is entitled to judgment in his favor. (*Id.* at 1-2). For relief, Minton asks that this Court order his good time credit days be restored. (*Id.* at 3).

On March 21, 2019, the undersigned entered an Order directing the parties to provide further documentation. (ECF No. 20). Respondent was ordered to respond to the allegations contained in Minton's Reply and "provide the Court with all records, laboratory test results, and other relevant documents related to [Minton's] disciplinary hearing that were not originally provided by Respondent." (*Id.* at 1-2). The undersigned further directed Minton to provide the Court with the remaining records he received in response to his FOIA request, as well as any other documents that he retained which pertained to his case. (*Id.* at 1).

On April 3, 2019, Respondent submitted a Motion to Stay and Motion to Dismiss Petition. (ECF No. 21). Respondent asks that the March 21, 2019 order be stayed as Minton's petition is now moot. (*Id.* at 1). To this end, Respondent asserts that the BOP has remanded Minton's case for a rehearing based on the claims made in his Reply. (*Id.* at 3). Respondent attached an Inmate Discipline Incident Report History for the challenged disciplinary action which reflects that on April 1, 2019, the challenged

7

disciplinary record was updated to indicate the charge was now "pending investigation" and was "recommended to be rewritten" by the legal department at FCI Beckley, as well as a sworn affidavit from Tiffanie Little, Legal Assistant for the BOP Mid-Atlantic Regional Office, attesting that the submitted incident report history is a true and correct copy. (*Id.* at 8).

On April 4, 2019, the undersigned issued an Order, noting that neither of the documents submitted by Respondent "explicitly confirms that the disciplinary matter has been remanded for rehearing." (ECF No. 22 at 1). Respondent was directed to provide, within 10 days, explicit verification that a rehearing was scheduled to take place. (*Id.* at 1-2). In the absence of such verification, Respondent was ordered to comply with the March 21, 2019 Order by April 19, 2019. (*Id.* at 2).

On April 8, 2019, Respondent submitted a response to the Court's order. (ECF No. 23). Respondent supplied two attachments, which purportedly reveal that (1) "on April 1, 2019, J. Carey, Regional Discipline Hearing Administrator for the Bureau of Prisons' South Central Regional Office, updated Incident Report No. 2830060 in SENTRY to reflect that the Incident Report is currently pending a rewrite and rehearing, based on the recommendation of the [Beckley Legal Department];" and (2) "[a] review of the SENTRY Inmate Discipline Data for Kendrick Minton, Federal Register Number 58777-019, shows that Incident Report No. 2830060 does not appear on [Minton's] chronological discipline history because the Incident Report is pending rehearing." (*Id.* at 1). In support of his assertion, Respondent attached a second sworn affidavit given by Ms. Little, wherein she certifies that the April 1, 2019, update to the relevant incident report reflects that the incident report is currently pending a rewrite and rehearing. (*Id.* at 5). Ms. Little further declares that the second attachment is "is a true and accurate copy of the SENTRY Inmate

8

Discipline Data for [Minton]," and that the relevant incident report no longer appears on Minton's Inmate Discipline Data record because it is now pending rehearing. (*Id.*). The referenced document, titled Inmate Discipline Data Chronological Disciplinary Record, contains several incident report summaries dating from April 2008 to April 2018, but does not include the challenged disciplinary incident. (*Id.* at 7-8).

On April 9, 2019, Minton submitted an Order of Compliance in response to the undersigned's March Order directing Minton to disclose the remainder of his FOIA request documents. (ECF No. 24). Minton attached the remainder of his 12-page FOIA request results, which consists of several urinalysis test results dated from November 2014, to May 2016. (*Id.* at 2-11).

## II.    **Standard of Review**

Although Respondent does not state under which rule he brings the motion to dismiss, given the stage in the proceedings at which it is brought, and the nature of the arguments presented, it is best understood as a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1). A motion under Rule 12(b)(1) challenges a court's subject matter jurisdiction over the pending dispute. *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). A Rule 12(b)(1) motion can be presented in two ways. First, the movant may contend that "a complaint simply fails to allege facts upon which subject matter jurisdiction can be based." *Adams*, 697 F.2d at 1219. When presented with this contention, the court assumes that the allegations in the complaint are true and affords the plaintiff the same procedural protection he would receive under Rule 12(b)(6). *Id.* Second, the movant may raise a factual attack against the complaint, alleging that the jurisdictional allegations of the complaint are not true. *Id.* Then, a court "is to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without

converting the proceeding to one for summary judgment." *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991) (citing *Adams*, 697 F.2d at 1219). The burden of proving that a court has subject matter jurisdiction rests with the plaintiff, as he is the party asserting it. *Johnson v. N. Carolina*, 905 F. Supp. 2d 712, 719 (W.D.N.C. 2012). However, the court should grant dismissal "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Id.*

A motion to dismiss under Rule 12(b)(1) is the appropriate avenue by which to raise the issue of mootness, because mootness deprives a federal court of jurisdiction under Article III of the United States Constitution. *See Justice v. Acosta*, No. 2:17-CV-03681, 2018 WL 4291744, at *3 (S.D.W. Va. Sept. 7, 2018); *see also Estate of Peeples v. Barnwell Cty. Hosp.*, No. CIV.A. 1:13-01678, 2014 WL 607586, at *5 (D.S.C. Feb. 18, 2014) (collecting cases). Here, Defendants are bringing a factual challenge to this Court's jurisdiction over Plaintiff's complaint, alleging that subsequent developments have removed the factual basis for jurisdiction. As such, this Court may consider evidence outside the pleadings without converting the motion to one for summary judgment. *See L.K. ex rel. Henderson v. N. Carolina State Bd. of Educ.*, No. 5:08-CV-85-BR, 2011 WL 861181, at *4 (E.D.N.C. Feb. 18, 2011), *report and recommendation adopted*, No. 5:08-CV-00085-BR, 2011 WL 861154 (E.D.N.C. Mar. 9, 2011).

## III.    Discussion

As a prerequisite to the exercise of federal jurisdiction, the complaint before the court must present an actual case or justiciable controversy. "To be justiciable under Article III of the Constitution, the conflict between the litigants must present a 'case or controversy' both at the time the lawsuit is filed and at the time it is decided. If intervening

factual ... events effectively dispel the case or controversy during pendency of the suit, the federal courts are powerless to decide the questions presented." *Ross v. Reed*, 719 F.2d. 689, 693-94 (4th Cir. 1983). "The requisite personal interest that must exist at the commencement of the litigation ... must continue throughout its existence." *Arizonans for Official English v. Arizona*, 520 U.S. 43, 68 n.22 (1997) (citations omitted). "Simply stated, a case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Powell v. McCormack*, 395 U.S. 486, 496 (1969). "Action by a defendant that simply accords all the relief demanded by the plaintiff may moot an action." *W. Virginia Highlands Conservancy v. Norton*, 161 F. Supp. 2d 676, 679 (S.D.W. Va. 2001) (citing 13A Federal Practice and Procedure § 3533.2). A case becomes moot, and accordingly no longer falls within the court's subject matter jurisdiction, when it is "impossible for a court to grant any effectual relief whatever to a prevailing party." *Chafin v. Chafin*, 568 U.S. 165, 172 (2013) (quoting *Knox v. Service Employees*, 567 U.S. 298, 307 (2012)).

Minton's petition challenges the outcome of a disciplinary hearing based on the grounds that it did not comply with the mandatory constitutional due process safeguards imposed by *Wolff v. McDonnell*, 418 U.S. 539 (1974). (ECF No. 14 at 14). The Due Process Clause of the Fourteenth Amendment mandates that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. Imprisonment for a crime does not completely divest a person of due process protections. *Wolff*, 418 U.S. at 555–56. "In order to prevail on either a procedural or substantive due process claim, inmates must first demonstrate that they were deprived of life, liberty, or property by governmental action." *Beverati v. Smith*, 120 F.3d 500, 502 (4th Cir. 1997) (markings omitted). "An inmate has a liberty interest in good time credit and no state may

constitutionally deprive him of that good time credit without due process of law." *Moses v. Bledsoe*, 2004 WL 3317657, at *2 (N.D.W. Va. 2004) (citing *Wolff*, 418 U.S. at 555.)

As Respondent correctly notes, when a prison elects to remand for rehearing a challenged disciplinary hearing, the remand obviates and renders moot due process concerns related to the initial hearing. *See Allen v. Young*, No. 5:18-CV-01271, 2019 WL 956813, at *2 (S.D.W. Va. Feb. 27, 2019) ("Here, the [p]etitioner succeeded in obtaining a rehearing regarding the challenged incident report. ... That decision renders moot this challenge to the initial hearing and the sanctions imposed in that hearing."); *Rojas v. Driver,* No. CIV. A. 5:06CV88, 2007 WL 2789471, at *4 (N.D.W. Va. Sept. 24, 2007), *aff'd*, 267 F. App'x 302 (4th Cir. 2008) ("Thus, the second hearing rendered moot the petitioner's claims regarding the first hearing."). Respondent has produced a sworn affidavit from a BOP employee certifying that the challenged disciplinary action is currently pending a "rewrite and rehearing," an inmate disciplinary record which shows that the challenged disciplinary action is no longer displayed as part of Minton's chronological disciplinary history, and an internal BOP document which indicates that on April 1, 2019 the status of the challenged disciplinary action was changed to "recommended to be rewritten" pursuant to a recommendation from the FCI Beckley legal department. (ECF Nos. 21 at 8, 23 at 5-8).    The record, therefore, reflects that the BOP has decided to grant Minton a rehearing of the challenged incident report, making Minton's instant § 2241 petition moot.

Minton is receiving from the BOP the extent of the relief available to him through this habeas proceeding. Indeed, even if the undersigned were to disregard the intervening decision to grant a rehearing and rule in Minton's favor on this petition, the Court would simply remand the incident report to the BOP, so that a rehearing in compliance with the

requisite constitutional protections could be conducted. *See e.g. Allen*, 2019 WL 956813, at *2 ("The remedy for a hearing that denied an inmate procedural safeguards is a hearing that complies with all due process requirements."); *Davis v. Hufford*, No. 1:11-CV-2219, 2012 WL 727697, at *7 (M.D. Pa. Feb. 10, 2012), *report and recommendation adopted*, No. 1:11-CV-2219, 2012 WL 744984 (M.D. Pa. Mar. 6, 2012) (finding that remand to the BOP for rehearing was appropriate remedy when BOP failed to consider relevant exculpatory evidence in disciplinary hearing); *and Woods v. Fox*, No. 17-CV-03164-MSK-KMT, 2018 WL 5082004, at *7 (D. Colo. Oct. 18, 2018) (remand for rehearing appropriate remedy when inmate's due process rights were violated at initial hearing). As the BOP has already scheduled a rehearing of the challenged disciplinary action, there is no further effectual relief which this Court can grant Minton. *See Rodriguez-Puente v. Feather*, No. 3:14-CV-01939-KI, 2015 WL 3514173, at *2 (D. Or. June 4, 2015) (holding that "there is no relief that can be provided by a favorable decision" when a rehearing is conducted by a BOP DHO) (collecting cases). Accordingly, the undersigned **FINDS** that Minton's § 2241 petition challenging the constitutionality of his initial disciplinary hearing is now moot.

## IV.    **Proposal and Recommendations**

For the aforementioned reasons, the undersigned respectfully **PROPOSES** that the District Court confirm and accept the foregoing findings and **RECOMMENDS** that Minton's Petition for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241, (ECF No. 1), be **DENIED** as moot; Minton's Motion for Demand for Judgment Relief to be Granted, (ECF No. 19), be **DENIED;** Respondent's Motion to Dismiss and Stay, (ECF No. 21), be **GRANTED;** and this action be **DISMISSED,** with prejudice, and removed from the docket of the court.

13

The parties are notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable Irene C. Berger, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, Petitioner shall have fourteen days (filing of objections) and three days (if received by mail) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing party, Judge Berger, and Magistrate Judge Eifert.

The Clerk is instructed to provide a copy of this "Proposed Findings and Recommendations" to the parties and any counsel of record.

**FILED:** May 15, 2019

Cheryl A. Eifert
United States Magistrate Judge

14